IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DAJUAN JERMAINE JOHNSON, | * |
| | * |
| v. | * Civil No. JKS-10-1527 |
| | * |
| MICHAEL J. ASTRUE | * |
| Commissioner of Social Security | * |
| | * |

**MEMORANDUM OPINION**

Plaintiff DaJuan Jermaine Johnson brought this action pursuant to 42 U.S.C. § 405(g) for review of a final administrative decision of the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act), 41 U.S.C. §§ 401–433, and §§ 216(i) and 223(d), respectively. Both parties' motions for summary judgment and Johnson's alternative motion for remand are ready for resolution and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Johnson's motions for summary judgment and remand will be denied and the Commissioner's motion for summary judgment will be granted.

1. **Background.**

Johnson protectively applied for DIB benefits on August 10, 2007 and for SSI benefits on August 27, 2007, seeking a closed period of disability from July 13, 2007 to March 19, 2009. (R. 9). Both applications were denied initially on December 5, 2007 and upon reconsideration on May 29, 2008. An Administrative Law Judge (ALJ) held a hearing on October 7, 2009, at which Johnson was represented by counsel. (R. 19). On October 26, 2009, the ALJ found that Johnson was not disabled within the meaning of the Act, (R.17–18), and on May 6, 2010, the Appeals Council denied his request for review. (R.1–3). Thus, the ALJ's determination became the Commissioner's final decision.

## 2. ALJ's Decision.

The ALJ evaluated Johnson's claims using the five-step sequential process set forth in 20 C.F.R. § 404.1520. First, the ALJ determined that Johnson had not engaged in substantial gainful activity from July 13 2007, the alleged onset date, to March 19, 2009, the end date of the requested closed period. (R. 11–12). At step two, the ALJ concluded that Johnson suffered from an injury to the right hand and depression, both of which qualified as severe impairments. (R. 12). At step three, the ALJ determined that Johnson did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12). Further, the ALJ found that Johnson had the Residual Functional Capacity (RFC) to perform light work during the period of impairment, but that Johnson was unable to (1) use his right hand for lifting, carrying, reaching, handling, fingering, or feeling; (2) climb ladders, ropes, or scaffolds; (3) be exposed to extreme temperature changes, excessive vibrations, dust, fumes, chemicals, and excessive humidity or wetness; or (4) perform work involving kneeling or crawling. (R. 13). The ALJ also found that Johnson required low-stress work; experienced moderate pain; had moderate limitations in completing a normal work day or work week without interruptions from pain, physical or psychological limitations; and had moderate limitations performing at a consistent pace without an unreasonable number and length of rest periods. (R. 13). At step four, the ALJ found that Johnson was unable to perform any past relevant work. (R. 16). At step five, the ALJ found, based on testimony from a vocational expert (VE), that jobs exist in significant numbers in the national economy that Johnson could perform. (R. 16–17). As a result, the ALJ determined that Johnson was not disabled within the meaning of the Act. (R. 17–18).

## 3. Standard of Review.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42

U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision when it is supported by substantial evidence. *Id.*

**4. Discussion.**

Johnson makes four allegations of error. First, he claims that the ALJ failed to properly compare the medical evidence presented to the Listing of Impairments (LOI) in 20 C.F.R., Part 404, Subpart P, Appendix 1. Second, Johnson claims that the ALJ erroneously assessed his RFC. Third, Johnson claims that the ALJ failed to give proper weight to the opinions of his treating physicians. Finally, Johnson claims that the ALJ erroneously assessed his subjective complaints of pain.

A. Comparison to Listing of Impairments.

Johnson claims that the ALJ erred in finding that he did not meet or medically equal the impairments in Sections 1.02B and 12.04 of the LOI, and thus erred in determining that Johnson was not disabled within the meaning of the Act.

(i) Section 1.02 Impairment

With regard to Section 1.02B, Johnson asserts that the neurological deficits, the lack of return of motor function, the decreased sensation and reflexes, and the reduced range of motion in his right arm meet or medically equal the Section 1.02B "Major Dysfunction of a Joint" category of the LOI.

When there is "ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments," the ALJ must identify the relevant impairment or impairments in the LOI and "compare each of the listed criteria to the evidence of the claimant's symptoms." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645–47 (D. Md. 1999) (citing *Cook v. Heckler*, 783 F.2d 1168 (4th Cir. 1986)); *see also McCall v. Astrue*, 2011 U.S. Dist. LEXIS 64402 at 4–*5 (D. Md. 2011). Section 1.02, in relevant part, provides the following:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> > B. Involvement of one major peripheral joint in **each** upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, ***as defined in 1.00B2c***.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02 (emphasis added). Therefore, in order to meet or medically equal the requirements of Section 1.02B, the claimant must satisfy Section 1.00B(2)c, which further defines the inability to perform fine or gross movements as an "extreme loss of function of ***both*** upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)c (emphasis added).

In the instant case, the ALJ explicitly considered the LOI category that most closely matched the evidence of Johnson's symptoms on the record. (R. 12). In making his determination, the ALJ compared Johnson's testimony and the medical evidence directly to the criteria of Section 1.02B and, accordingly, Section 1.00B(2)c. (R. 12). During his testimony before the ALJ, Johnson stated that although he was right-hand dominant and that the stabbing injured his right arm (R. 25), he had full use his left hand. (R. 27–28). Based on the evidence, only Johnson's upper right extremity suffered an impairment, and not both extremities as required under Section 1.00B(2)c. Therefore, the ALJ properly compared Johnson's injury to

4

Section 1.02B and appropriately determined that Johnson was not disabled under the criteria of the LOI.

        (ii)      Section 12.04 Impairment

With regard to Section 12.04, covering "Affective Disorders," Johnson asserts that during and prior to his closed period of disability, he suffered a combination of depressive and substance abuse episodes sufficient to meet or medically equal the LOI criteria of Section 12.04B. Once again, if there is ample evidence to support a determination that a claimant meets or medically equals one of the impairments in the LOI, the ALJ must identify the relevant impairments and compare the LOI criteria to the claimant's symptoms. *See Ketcher*, 68 F. Supp.2d at 645–47.

Section 12.04 applies to "Affective Disorders," which are "[c]haracterized by a disturbance of mood, [and] accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. In order to satisfy this Section of the LOI, the claimant must prove that the alleged disability meets or medically equals the required level of severity by satisfying the requirements in both 12.04A and 12.04B. *Id.* The two sections, in relevant part, require the following:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
>> 1. Depressive syndrome characterized by at least four of the following:
>>> a. Anhedonia or pervasive loss of interest in almost all activities; or
>>> b. Appetite disturbance with change in weight; or
>>> c. Sleep disturbance; or
>>> d. Psychomotor agitation or retardation; or
>>> e. Decreased energy; or
>>> f. Feelings of guilt or worthlessness; or
>>> g. Difficulty concentrating or thinking; or
>>> h. Thoughts of suicide; or
>>> i. Hallucinations, delusions, or paranoid thinking; or
>>
>> 2. Manic syndrome characterized by at least three of the following:
>>> a. Hyperactivity; or

> b. Pressure of speech; or
> c. Flight of ideas; or
> d. Inflated self-esteem; or
> e. Decreased need for sleep; or
> f. Easy distractibility; or
> g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
> h. Hallucinations, delusions or paranoid thinking;
>
> Or
>
> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
>
> AND
>
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04A and B. A marked limitation is one that is "more than moderate but less than extreme" and can occur when "several [of a claimant's] activities or functions are impaired, or even when only one is impaired." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 14.00I5. Moreover, a claimant "need not be totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation seriously interferes with [the claimant's] ability to function independently, appropriately, and effectively." *Id.* Repeated episodes of decompensation require three episodes within one year, or an average of once every 4 months, each lasting for at least 2 weeks. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C4. If the claimant has "experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, [the court] must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." *Id.*

In the instant case, the ALJ found that Johnson did not satisfy the Section 12.04B criteria. (R. 12). Specifically, the ALJ found that Johnson did not suffer a marked restriction of activities

6

of daily living because he was able to take care of himself and his family and was able to clean, cook, and shop for food and clothes. (R. 12). Second, the ALJ found that Johnson did not suffer any marked difficulties in social functioning because he attended church one a week, occasionally visited friends and extended family, and played with his children. (R. 12). Third, the ALJ found that Johnson suffers only moderate difficulties in maintaining concentration, persistence, or pace when he is under stress, and the ALJ accordingly included those difficulties in the hypotheticals posed to the VE. (R. 12–13). Finally, the ALJ found that Johnson did not experience any repeated episodes of decompensation, each of extended duration. (R. 13). As a result, the ALJ concluded that because Johnson did not satisfy at least two of the Section 12.04B criteria, he was not disabled under the LOI category. (R. 13). The ALJ also determined that Johnson did not meet the requisite criteria of Section 12.04C, although Johnson does not challenge the ALJ's finding in that regard. (R. 13).

Based on the record, there is substantial evidence to support the ALJ's findings and conclusion. According to Johnson's own testimony with regard to his daily activities, he was able to watch television, manage his money, and operate a checking and savings account. (R. 30). With regard to his social activities, Johnson testified that he socialized with friends and family, went to the movies, and played with his children on the weekends. (R. 30). Johnson also indicated that he went to church once a week. (R. 29). During the hearing, when questioned about his concentration, Johnson testified that was able to follow written and oral instructions very well (R. 30), but that he had some trouble reading the Bible. (R. 37). Finally, with regard to repeated episodes of decompensation, there were no episodes of record during the alleged period of disability. Although Johnson suffered a self-administered phencyclidine (PCP) overdose on October 8, 1993 (R. 194), that incident occurred outside of the closed period of disability and Johnson testified that he had not used any drugs since the age of 23, well outside the period of disability. (R. 32–33). Johnson also testified that he did not take any medication

7

for his depression symptoms. (R. 37). Based on the overall record, Johnson only experienced moderate issues in the area of concentration, and therefore failed to satisfy Section 12.04B's threshold requirement of marked impairments in at least two of the delineated criteria. Therefore, the ALJ properly compared Johnson's condition to Section 12.04 and appropriately determined that Johnson was not disabled under the criteria of the LOI.

   (iii) Combination of Impairments

Johnson asserts that the ALJ failed to consider the combination of the impairments to his right upper extremity, his depression, and his anxiety disorders. The ALJ must consider the severity of a claimant's impairments individually and in combination with the other impairments alleged. 20 C.F.R. § 404.1523; *see also Pennington v. Astrue*, 2011 U.S. Dist. LEXIS 122049, at *15–*16 (D. Md. 2011).

In the instant case, the ALJ explicitly considered Johnson's impairments and his combination of impairments. At step two, the ALJ concluded that Johnson did not "have an impairment or combination of impairments that meets or medically equals one of the listed impairments" in the LOI. (R. 12). While the ALJ outlined and analyzed each impairment separately at step two, he considered Johnson's combination of impairments in the hypotheticals he posed to the VE (R. 41–45) and in the extensive analysis and determination of Johnson's RFC. (R. 13–16). As a result, the ALJ ultimately concluded that Johnson's combination of impairments was insufficient to satisfy the LOI, and this determination is supported by ample evidence in the record.

 B. Assessment of RFC.

Johnson asserts that the ALJ improperly determined that he could perform light work with the series of delineated limitations mentioned above. Specifically, Johnson claims that the ALJ ignored the VE's response to the third and final hypothetical posed during the hearing, in which the VE stated that no jobs existed in the economy to accommodate the series of limitations

8

in the particular hypothetical. (R. 45).

RFC is the most work an individual can do for 8 hours a day, 5 days a week, despite that individual's determinable physical or mental impairment and any relevant symptoms, such as pain. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1); SSR 96-8p, 1996 SSR Lexis 5, at *5. The ALJ must make the RFC determination after considering all of the relevant medical and non-medical evidence in the record. 20 C.F.R. §§ 416.920(e) and 416.945. In making the ultimate disability determination, the ALJ may also take into account the claimant's failure to follow the course of treatment prescribed by his physician, particularly when that course of treatment can restore a claimant's ability to work. 20 C.F.R. § 404.1530(a) and (b).

Further, when assessing a claimant's physical and mental abilities, the ALJ must perform a function-by-function assessment, first with regard to the nature and extent of the claimant's limitations, and then with regard to the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 416.945(b) and (c); SSR 96-8p, at *3. The ALJ's evaluation must also include a narrative discussion describing how medical facts and non-medical evidence support the ALJ's conclusion. *Fleming v. Barnhart*, 284 F. Supp 2d 256, 271 (D. Md. 2003); SSR 96-8p, 1996 SSR Lexis 5, at *19. In addition, the mental RFC assessment requires a more detailed narrative, in which the ALJ must itemize various functions contained in the categories of the LOI. *See Phinga Thu Tran v. Astrue*, 2009 U.S. Dist. LEXIS 96224, at *11–*12 (D. Md. 2009).

Here, in assessing Johnson's physical abilities, the ALJ considered the extent of Johnson's stab wounds and the surgical procedures necessary to repair the damage caused (R. 180–94), as well as the accompanying pain symptoms and prescribed medications. (R. 14). The ALJ also considered examinations by and the opinions of Dr. Walter Eglseder, Johnson's treating physician, and Dr. George Thorpe, both of whom highlighted Johnson's right arm impairments. (R. 14–15). However, the ALJ weighed the opinions about Johnson's impairments

against his limited compliance with the home exercises and physical therapy prescribed by Dr. Eglseder, as well as Johnson's increased ability to take care of himself and his family during the period of disability as he transitioned from being right hand-dominant to left hand-dominant. (R. 14–15).

In assessing Johnson's mental abilities, the ALJ considered Johnson's history of depression, anxiety, and substance abuse, as well as his treatment relationship with therapist Rasheda McGuire and his psychological consultation with Dr. K. Wessel. (R. 15–16). Both experts discussed Johnson's stabbing and the accompanying right arm limitations. (R. 267; 304). Although McGuire discussed Johnson's feelings of insecurity and depression as a result of the loss of his mother and the stabbing (R. 270–71), she did not suggest that Johnson was incapable of work as a result; instead, she recommended depression education, self-esteem enhancement, and the development of coping techniques. (R. 271–72). In addition, while Dr. Wessel indicated that Johnson suffered from a mood disorder and noted problems with concentration and mood swings, he ultimately concluded that Johnson's RFC was "compatible with work related functions equated with competitive employment." (R. 292–308).

Despite the evidence tending to negate the severity of Johnson's physical and mental impairments, the ALJ properly presented hypotheticals to the Vocational Expert that included all of the symptoms and the varying levels of severity that Johnson alleged. (R. 41–45). While the VE opined that there were no jobs available that would satisfy the third hypothetical, which involved the most severe of Johnson's alleged physical and mental impairments (R. 45), the ALJ concluded that Johnson's impairments did not rise to the levels described in hypothetical 3, and were therefore inapplicable to the case. (R. 12–16). Ultimately, the ALJ concluded that Johnson was able to perform light work with the appropriate physical limitations in light of his right hand impairment and fully-functional left hand, as well as low-stress work in light of his mental impairment. (R. 13). This conclusion is supported by ample evidence in the record, and was

therefore proper.

C. Weight of Treating Physician Opinions.

Johnson argues that the ALJ erred in rejecting his treating physicians' opinions and instead giving more weight to the opinions of the non-treating physicians involved in determining Johnson's RFC. Specifically, Johnson cites the opinions of Drs. Eglseder, Thorpe, and Taller, and his therapist Rasheda McGuire as those that should have received controlling weight.

An ALJ must consider the medical opinions in a claimant's record in conjunction with the rest of the relevant evidence. 20 C.F.R. § 416.927(b). While the ALJ usually gives more weight to the opinion of a treating physician, that opinion should be accorded less weight when it is inconsistent with the other substantial evidence on the record. *See* 20 C.F.R. § 416.927(b)(2); *see also Craig v. Charter*, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ is not required to give controlling weight to a physician's opinion regarding the ultimate issue of a claimant's disability. 20 C.F.R. § 404.1527(e); SSR 96-5p, 1996 SSR LEXIS 2.

Here, in assessing Johnson's physical impairments, the ALJ explicitly considered the opinions of Drs. Thorpe and Eglseder (R. 14–15), which Johnson claims the ALJ failed to accord controlling weight. However, the ALJ did give Dr. Eglseder's opinions, as those of a treating physician, significant weight when they were consistent with the other substantial evidence on the record. Specifically, the ALJ discussed Dr. Eglseder's opinion that Johnson, for insurance reasons, could not initially undergo physical therapy in order to regain the use of his right arm, but also failed to comply with the necessary home exercises which Dr. Eglseder stressed in three consecutive visits over eight months during the closed period of disability. (R. 15, *see* R. 312, 314, 316). Dr. Eglseder's opinions were also consistent with those of Dr. Thorpe, who cited Johnson's right arm impairment but also cited Johnson's fully-functional left arm and stressed Johnson's need to follow up regularly with physical therapy. (R. 257–58). These opinions were

11

consistent with Johnson's own testimony as well as the rest of the evidence on the record, including the opinions of Drs. Ahn (R. 259–66) and Johnston (R. 274–81).

In assessing Johnson's mental impairments, the ALJ explicitly considered the opinions of Rasheda McGuire and Dr. Wessel (R. 15–16), which were consistent with the opinions of Dr. Taller (R. 282–91). Ultimately, based on the opinions of Johnson's physicians, including those of his treating physician, as well as the consistency of those opinions with the substantial evidence on the record, the ALJ properly determined that Johnson was not disabled, and fashioned the RFC to reflect the necessary limitations opined by Johnson's physicians and therapist.

### D. Analysis of Subjective Complaints.

Johnson contends that the ALJ erred in determining that his statements concerning the intensity, persistence, and limiting effects of his pain complaints were not credible, and that there was ample evidence in the record to support Johnson's alleged symptoms.

When evaluating whether a person is disabled by subjective symptoms, an ALJ must follow a two-step process. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529. First, the ALJ must determine that objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant makes this threshold showing, the ALJ must evaluate the extent to which these symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1).

At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must also assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown solely by objective medical evidence. SSR 96-7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any

12

other factors contributing to functional limitations.  *Id.*  The ALJ's opinion should be given great weight upon review because he has had the opportunity to observe the demeanor and determine the credibility of the claimant.  *Shivley*, 739 F.2d at 989–90.

Here, the ALJ followed the mandated two-step process, and found that although Johnson's medically-determinable impairments could reasonably be expected to cause the symptoms alleged, Johnson's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible.  (R. 14).  Throughout the RFC assessment, the ALJ considered all of the necessary evidence on the record, including Johnson's medical history regarding his stabbing, the resulting damage to his right arm, and the medications taken, as well as Johnson's history of depression and post-traumatic stress disorder.  (R. 14–15).  The ALJ also considered the objective medical evidence, specifically citing opinions by Drs. Thorpe, Eglseder, Ahn, Johnston, and Wessel, as well as therapist Rasheda McGuire.  (R. 14–16).  Finally, in assessing the credibility of Johnson's statements, the ALJ considered Johnson's transition to being left-hand dominant (R. 15; 27–28); his ability to cook, clean, shop, play with his children, and attend church regularly (R. 15; 28–31); and the effects of pain on Johnson's ability to complete a normal work day.  (R. 15).  All of the evidence properly informed the weight that the ALJ accorded Johnson's subjective complaints, as well as the ALJ's ultimate determination of Johnson's RFC.

**5. Conclusion.**

For the foregoing reasons, Johnson's motions for summary judgment and remand will be denied and the Commissioner's motion for summary judgment will be granted.

Date:  November 1, 2011                                         /S/
                                                                                JILLYN K. SCHULZE
                                                                                United States Magistrate Judge